SO ORDERED.

SIGNED this 8 day of June, 2016.



_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

                                                                                                  CASE NO. 11-02804-8-JNC

**THOMAS SCOTT COOPER**
**REBECCA J. COOPER**                                                CHAPTER 13

          DEBTORS

## ORDER REGARDING MOTION TO VALUE COLLATERAL

The matter before the court is the motion to value collateral filed by the debtors, Dkt. 174. A hearing took place in Raleigh, North Carolina on May 12, 2016, before Judge Stephani W. Humrickhouse, at the conclusion of which a potential conflict was identified and the case was reassigned to Judge Joseph N. Callaway, the above-signed.[1]  At a telephonic status conference conducted on May 18, 2016, all parties agreed to the court proceeding on the record established before Judge Humickhouse with respect to the issues addressed herein.

Thomas Scott Cooper and Rebecca J. Cooper filed a joint voluntary petition for relief under chapter 13 of the Bankruptcy Code on April 9, 2011.  At all relevant times, the Coopers have owned real property located at 803 Pamlico Drive, Cary, North Carolina (the "Property") and have

---

[1] Also scheduled for hearing on May 12, 2016, were the trustee's motion to dismiss, Dkt. 171, which is being held open pending determination of the instant motion, and the motion to reconsider an order directing a Rule 2004 examination, Dkt. 225, which was withdrawn on the record at the hearing.

used the Property as their residence. The Coopers scheduled the value of the Property as $75,000. Dkt. 12 at 8. As of the petition date, First Bank held a first lien on the Property in the amount of $90,982.99 (the "First Bank Lien"). *See* Claim No. 10-1. American Home Mortgage Servicing, Inc. ("AHMS") held a second lien on the Property in the amount of $159,836.42 (the "AHMS Lien"). *See* Claim No. 8-1. On April 28, 2011, the Coopers filed their proposed chapter 13 plan, which provided for monthly payments to First Bank in the amount of $253, and no payments to AHMS. Dkt. 13. On May 3, 2011, the Coopers filed a motion to value collateral, seeking a determination that the value of the Property was $75,000 and that the claim of AHMS was fully unsecured pursuant to 11 U.S.C. § 506 and *In re Kidd*, 161 B.R. 769 (Bankr. E.D.N.C. 1993). Dkt. 15. On May 19, 2011, AHMS filed a response opposing the motion to value collateral, asserting that the tax value of the Property was $212,521 and that an adversary proceeding was required to determine the extent of its lien. Dkt. 26.

The motion to value collateral was scheduled for hearing, but was continued several times. An adversary proceeding was filed in the interim on December 3, 2012, seeking to determine the priority of the First Bank and AHMS Liens. *Homeward Residential, Inc. v. First Bank, Thomas Scott Cooper and Rebecca J. Cooper (In re Cooper)*, Adv. Pro. No. 12-0300-8-SWH (the "AP").[2] The Complaint asserted that the First Bank Lien should be canceled because it was paid in full at the closing of the AHMS loan, a request was made that the line of credit be closed, the attorney failed to close the line of credit, and the Coopers later drew funds on the line of credit. AP Dkt. 1. The bankruptcy court dismissed the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable in the adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, finding that no legal basis existed for AHMS to seek cancelation or subordination of the

---

[2] According to the Complaint at ¶ 7, AHMS changed its name to Homeward Residential, Inc. For consistency and clarity, the court will continue to refer to the creditor as AHMS in this order.

First Bank Lien. AP Dkt. 31. On appeal, the district court affirmed the bankruptcy court's order. AP Dkt. 40. As a result, as of April 29, 2014, the First Bank Lien remained in first position. A subsequent appeal to the United States Court of Appeals was dismissed after the parties reached a settlement. *Homeward Residential, Inc. v. First Bank*, Case No. 14-1438, COA Dkt. 21 (4th Cir. September 29, 2014).

On September 2, 2014, an Assignment of Note and Deed of Trust was recorded with the Wake County Register of Deeds, reflecting that First Bank assigned its note and deed of trust to First American Title Insurance Company.[3] *See* Dkt. 164 and exhibits thereto. The same day, a subordination agreement was recorded in the Wake County Registry subordinating the First Bank Lien to the AHMS Lien. *Id.* On November 17, 2014, the pending motion to value collateral was withdrawn without prejudice. Dkt. 167.

On March 27, 2015, the Coopers filed a second motion to value collateral, Dkt. 174, seeking a determination that the First Bank Lien, now relegated to second position, is fully unsecured pursuant to § 506 and *Kidd*. The motion asserts that the value of the Property is less than the $159,836.42 reported payoff of the AHMS Lien (now in first position *vis-a-vis* the First Bank Lien as a result of the subordination agreement). On March 30, 2015, a response in opposition to the motion to value collateral was filed by First American Title as the holder of the First Bank Lien. Dkt. 179. The response asserts that the ad valorem tax value is $212,521.00 and that the value of the Property exceeds $159,836.52. Scheduled hearings on the motion were continued while the parties conducted discovery. The matter is now ripe for decision.

Before the court considers the question of the value of the Property, two threshold questions must be addressed: First, is the value determined as of the petition date (April 9, 2011), or as of

---

[3] For consistency and clarity, the court will continue to refer to the lien as the First Bank Lien herein.

the hearing date (May 2016)?  And second, which order of lien priority applies – as they existed on the petition date (with the First Bank Lien in first position) or on the hearing date (with the AHMS Lien in first position)?  If the value is determined as of the petition date with the First Bank Lien in first position, the value of the Property need only exceed $90,982.99 (the amount of the First Bank claim on the petition date) to provide security for both liens.  The Coopers have conceded that the value as of that date exceeded $90,982.99.[4]

## DISCUSSION

Section 506(a) provides that for purposes of determining the secured status of a creditor, "value shall be determined in light of the purpose of the valuation and of the proposed distribution or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."  11 U.S.C. § 506(a).  First American Title contends that for purposes of lien stripping under § 506 and *Kidd*, the value of the Property as of the petition date is the relevant value.  The Coopers maintain that the valuation is ultimately for the purpose of confirmation of their chapter 13 plan, and thus the confirmation date – or something close to it – is the relevant date.

"[A] split of authority exists regarding the proper valuation date when a Chapter 13 debtor seeks to 'strip off' a lien as being wholly unsecured."  *Fair v. First Choice Am. Cmty. Fed. Credit Union (In re Fair)*, No. 13-387, 2014 Bankr. LEXIS 3105, *5-6 (Bankr. N.D.W. Va. July 21, 2014) (citations omitted).  The majority position is that the petition date is the proper valuation date for chapter 13 lien stripping.  *TD Bank, N.A. v. Landry (In re Landry)*, 479 B.R. 1, 7 (D. Mass. 2011);

---

[4] The Coopers maintain that the value of the Property on the petition date was $147,000, and the current value of the Property is $154,000.  American Title maintains that the value of the Property on the petition date was $215,000, and that the current value of the Property is $235,000.

4

*In re Meddock*, No. 6:10-bk-10657-KSJ, 2014 Bankr. LEXIS 4989, *8 (Bankr. M.D. Fla. Dec. 10, 2014).

Cases valuing property as of the petition date for possibly stripping a junior lien from a residential mortgage include: *Landry*, 479 B.R. 1 (petition date is appropriate date for determining whether the antimodification provision of § 1322(b)(2) applies); *Marsh v. United States Dep't of Housing & Urban Dev't (In re Marsh)*, 475 B.R. 892 (N.D. Ill. 2012) (valuation date for determining whether junior mortgage is entirely unsecured is date of petition or may be date of entry of final judgment resolving adversary proceeding, but is not the date of confirmation); *Reconco v. Partners for Payment Relief DE III, LLC (In re Reconco)*, No. 13-10564-RGM, 2014 Bankr. LEXIS 1219 (Bankr. E.D. Va. March 31, 2014) ("Using the petition date is consistent with the fixing of the debtor's and creditor's rights in light of the intended use of the property — retention as the debtor's principal residence — and the amount of the claims necessary to be determined in connection with the stripoff proceeding."); *Fair*, 2014 WL 3617875 (petition date is appropriate valuation date for stripping off a lien on property the debtor wishes to retain, citing to dicta in *Alvarez v. HSBC Bank USA, N.A. (In re Alvarez)*, 733 F.3d 136, 139 (4th Cir. 2013), that when value of collateral as of petition date was less than the amount owed on the first priority lien, the second priority lien was rendered valueless); *In re Putman*, 519 B.R. 491, 498 (Bankr. N.D. Miss. 2014) (valuing property as of petition date and noting that majority of courts considering this issue have also settled on petition date); and *Dean v. LaPlaya Invs., Inc. (In re Dean)*, 319 B.R. 474, 479 (Bankr. E.D. Va. 2004) (petition date is proper valuation date for the purpose of stripping off mortgage lien where debtors used the property as residence throughout their bankruptcy case; rejects effective date of plan, totality of the circumstances, or other flexible method in determining the valuation date).

The Coopers cite the following cases from this district in support of their position that the confirmation date is the property date of valuation: *In re Sailboat Props., LLC*, No. 10-03718-8-SWH, 2011 Bankr. LEXIS 1316, *1, 2011 WL 1299301 (Bankr. E.D.N.C. Mar. 31, 2011); *In re Bate Land & Timber, LLC*, 523 B.R. 483, 485 (Bankr. E.D.N.C. 2015); and *In re Shah*, No. 05-01929-5-ATS (Bankr. EDNC March 2, 2007). *Sailboat* and *Bate Land* looked to the "purpose of the valuation" as required by § 506, but in those cases, the reason for valuation differs from the purpose in the present case. Specifically, *Sailboat* and *Bate Land* were chapter 11 cases in which the debtors proposed to surrender real property in satisfaction of the secured creditor's debt, known as "dirt for debt" cases. Where property is surrendered to satisfy current indebtedness in full, the transfer to the creditor is a substitute for money and consequently must constitute the "indubitable equivalent" of the claim. As a result, only the present value of property at or near to the time a creditor will take possession is relevant. Notably, here, the debtors intended to use and have continued to use the Property as their residence from the beginning of their chapter 13 case. They have not surrendered the property, but instead have benefitted by living there since the petition date, now a period of almost five years. As a result, the purpose of the valuation for lien stripping is substantially different than when the property is surrendered and transferred to the creditor upon confirmation of a chapter 11 plan to pay a fully secured debt in a form other than money.

*Shah* was a chapter 13 case in which the debtor moved to avoid a judicial lien pursuant to § 522(f). The court found that the debtor met the requirements for avoiding the lien, but that it could only be avoided at confirmation. At the later hearing on confirmation, the court considered whether the debtor met the "good faith" requirement of § 1325(a)(3), and considered as one of the factors the "debtor's use of § 522(f)." Because the debtor in *Shah* would not have been able to avoid the lien as of the confirmation date (because one of the liens on her property had been

satisfied during the chapter 13 case), the court found that this factor weighed against her good faith. The court further found that the debtor would not be able to meet the liquidation test and several other factors that pointed toward a lack of good faith. Further, the court had specifically reserved the question of lien avoidance to be addressed at confirmation, and did not separately analyze which date was the appropriate date for considering lien avoidance. As a result, *Shah* is distinguishable for several reasons, including that it addressed lien avoidance under § 522(f) rather than lien stripping under § 506 and that the timing issue was not directly before the court. In short, it appears that factors peculiar to the *Shah* case were present that motivated the court to deviate from the majority position in that instance. Consequently, *Shah* has no applicability here.

Two other cases cited by the Coopers, *Aubain v. LaSalle Nat'l Bank (In re Aubain)*, 296 B.R. 624, 636 (Bankr. E.D.N.Y. 2003), and *Wood v. LA Bank (In re Wood)*, 190 B.R. 788, 789, (Bankr. M.D. Pa. 1996), both concluded that while a hard and fast rule did not apply, the petition date was the proper date for valuation for purposes of stripping a consensual lien after conducting an equitable analysis. In reaching their decisions, those courts considered several factors, including:

1. The impact of the debtor's efforts on the postpetition change in value.
2. The expectancies of the parties at the time they may have made the loan agreement (if any).
3. The desirability of uniformity. Will the application of different dates for valuation purposes reach an absurd result?
4. The convenience of administration.
5. The equitable concept that those who bear the risk should benefit from the rise in value.
6. A resulting windfall to any one party should be discouraged.
7. The bankruptcy policy set forth in section 552(b) which extends prepetition liens to postpetition proceeds in certain situations.
8. The bankruptcy policy set forth in 11 U.S.C. § 362(d) which encourages the tendering of adequate protection payments to a creditor holding depreciating collateral.
9. The oft-stated policy of bankruptcy to secure the debtor a "fresh start." *Lines v. Frederick*, 400 U.S. 18, 19, 91 S. Ct. 113, 27 L. Ed. 2d 124 (1970).

7

    10. The result of utilizing a specific date of valuation on the bankruptcy itself including that impact upon senior and junior lien creditors.
    11. Whether the party benefitting from a delay in valuation has been responsible for that delay.

*Wood*, 190 B.R. at 794-95; *Aubain*, 296 B.R. at 636.

  While the court is inclined to use the petition date in most lien stripping situations, regardless which test is used – the bright-line petition date rule sought by the secured parties, or the *Wood* and *Aubain* case-by-case equitable factors argued by the Coopers – the court reaches the same conclusion: The applicable value is the value on the petition date. This is true even though the central fact in the present case – the postpetition change in priority between liens – differs somewhat from the key point in *Wood* and *Aubain* – a significant postpetition appreciation in property value.

  The Coopers' asserted valuation on petition date and today ($147,000 and $154,000, respectively) would render the First Bank Lien unsecured if its lien position is subordinated as of either date. If the analysis is conducted with the First Bank Lien in first place, the AHMS Lien would remain secured under either Cooper valuation because there is value above the First Bank Lien payoff regardless of when it is calculated (about $90,000 as of the petition date or $103,000 as of the current date). Furthermore, the American Title valuation for either date would provide sufficient value for both liens to remain fully secured regardless of priority. Accordingly, the court will review the *Wood* factors as they apply to the lien position rather than to the value of the Property, as the relative lien position may be determinative of the motion.

  Notably, the *Wood* factors are largely equitable in nature. The First Bank Lien was paid off and was to have been canceled when the AHMS deed of trust was recorded. When it was not, the Coopers later drew down the still-open line of credit secured by the First Bank Lien for their own benefit and purposes without the permission of either First Bank or AHMS. In a sense, First

8

Bank is more akin to an involuntary creditor, but it remained protected by virtue of its still-existing first position lien under North Carolina law, as both the bankruptcy court and the district court concluded in the adversary proceeding. The First Bank Lien was later subordinated only under the voluntary agreement of American Title and AHMS to settle an action between them, not due to any claims either may have or had against the Coopers or due to any action of the Coopers.

Using the later date and applying the subordination agreement to strip the First Bank Lien under these circumstances would create a windfall for the Coopers (assuming, without finding, the debtors' value is correct), as their questionable action in drawing funds on a credit line designated for cancellation created this problem in the first place. Either holding creates a problem with administration of this case: The delay has brought this case extremely close to the 60-month maximum plan length without a plan being confirmed, and the Coopers' plan payments are insufficient to provide for either of the secured claims to be paid, never mind both.

Finally, the equitable maxims of "he who asks equity must do equity" and "he who comes into a court of equity, invoking its aid, must come with clean hands" controls bankruptcy cases where relief is sought in a bankruptcy or insolvency cases outside of pure statutory rights. *See Hedrick v Hickfield,* 283 F. 574, 583 (E.D.N.C. 1922); and *G.L. Wilson Bldg. Co. v. Leatherwood,* 268 F. Supp. 609 (W.D.N.C. 1967). Because the Coopers benefitted by taking funds from the First Bank line of credit when that instrument was to be extinguished, a fact that must have been known to them, they have not acted in an equitable manner. Consequently, equity demands that both liens remain intact under either the bright line petition date test or under the *Wood* factors analysis.

The balance of these factors weighs in favor of considering the motion to value the Property as of the petition date, with the relative priorities of the liens considered as they existed on the petition date. Such a holding is also consistent with the majority rule. Because the Coopers have

conceded that the Property is worth more than the balance owed on the First Bank Lien, which was in first position on the petition date, there is no need for the court to determine the actual value of the Property on the petition date.  With a minimum value of $147,000 on that date, there is at least $1 of value to support the AHMS second lien.  As a consequence, the debtors may not avoid or modify either mortgage pursuant to 11 U.S.C. § 1322(b)(2) under their chapter 13 plan in this case.

**END OF DOCUMENT**