**SO ORDERED.**
**SIGNED this 20 day of January, 2017.**



_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

| | |
|---|---|
| THOMAS SCOTT COOPER | CASE NO. 11-02804-8-JNC |
| REBECCA J. COOPER | CHAPTER 13 |
| DEBTORS | |

### ORDER DENYING MOTION FOR ADEQUATE PROTECTION
### AND DENYING MOTION FOR CONFIRMATION OF PLAN

The matters before the court are the motion for confirmation of plan filed by the chapter 13 trustee on October 26, 2016, Dkt. 281, and the motion for adequate protection filed on November 16, 2016 by First American Title Insurance Company ("First American"), Dkt. 285 (the "Adequate Protection Motion"). A hearing took place in Raleigh, North Carolina on December 13, 2016,[1] following which the debtors submitted a memorandum of law with respect to the Adequate Protection Motion on December 21, 2016, Dkt. 308.

### BACKGROUND

Thomas Scott Cooper and Rebecca J. Cooper filed a joint petition for relief under chapter 13 of the Bankruptcy Code on April 9, 2011. At all relevant times, the Coopers have owned real

---

[1] A motion for relief from the automatic stay filed by Selene Finance LP, Dkt. 258, and an application for additional attorney's fees filed by counsel for the debtors, Dkt. 280, were also heard on December 13, 2016. Both were allowed by separate orders.

property located at 803 Pamlico Drive, Cary, North Carolina (the "Property") and have used the Property as their primary residence. The Coopers scheduled the value of the Property at $75,000. Dkt. 12 at 8. As of the petition date, First Bank held a first lien on the Property in the amount of $90,982.99 (the "First Bank Lien"). *See* Claim No. 10-1. American Home Mortgage Servicing, Inc. ("AHMS") held a second lien on the Property in the amount of $159,836.42 (the "AHMS Lien"). *See* Claim No. 8-1. On April 28, 2011, the Coopers filed their proposed chapter 13 plan, which provided for monthly payments to First Bank in the amount of $253, and no payments to AHMS. Dkt. 13. On May 3, 2011, the Coopers filed a motion to value collateral, seeking a determination that the value of the Property was $75,000 and that the claim of AHMS was fully unsecured pursuant to 11 U.S.C. § 506 and *In re Kidd*, 161 B.R. 769 (Bankr. E.D.N.C. 1993). Dkt. 15. On May 19, 2011, AHMS filed a response opposing the motion to value collateral, asserting that the tax value of the Property was $212,521 and that an adversary proceeding was required to determine the extent of its lien. Dkt. 26.

The motion to value collateral was scheduled for hearing, but was continued several times. An adversary proceeding was filed in the interim on December 3, 2012, seeking to determine the priority of the First Bank and AHMS Liens. *Homeward Residential, Inc. v. First Bank, Thomas Scott Cooper and Rebecca J. Cooper (In re Cooper)*, Adv. Pro. No. 12-00300-8-SWH (the "AP").[2] In summary, the Complaint asserted that the First Bank Lien should be canceled because it was paid in full at the closing of the AHMS loan, a request was made that the line of credit be closed, the closing attorney failed to cancel the deed of trust on record securing the line of credit, and the

---

[2] According to the Complaint at ¶ 7, AHMS changed its name to Homeward Residential, Inc. Further, a notice of transfer of claim filed on May 23, 2016, shows that the AHMS loan was assigned to Wilmington Savings Fund Society, FSB. Dkt. 248. For consistency and clarity, the court will continue to refer to the creditor as AHMS in this order.

Coopers later drew funds on the line of credit.[3] AP Dkt. 1. The bankruptcy court dismissed the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable in the adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, finding that no legal basis existed for AHMS to seek cancelation or subordination of the First Bank Lien. AP Dkt. 31. On appeal, the district court affirmed the bankruptcy court's order. AP Dkt. 40. As a result, as of April 29, 2014, the First Bank Lien remained in first position. A subsequent appeal to the United States Court of Appeals was dismissed before a decision was issued when the parties reached a settlement. *Homeward Residential, Inc. v. First Bank*, Case No. 14-1438, COA Dkt. 21 (4th Cir. Sept. 29, 2014).

On September 2, 2014, an Assignment of Note and Deed of Trust was recorded with the Wake County Register of Deeds, reflecting that First Bank assigned its note and deed of trust to First American Title Insurance Company.[4] *See* Dkt. 164 and exhibits thereto. The same day, a subordination agreement was recorded in the Wake County Registry subordinating the First Bank Lien to the AHMS Lien. *Id.* On November 17, 2014, the pending motion to value collateral was withdrawn without prejudice. Dkt. 167.

On March 27, 2015, the Coopers filed a second motion to value collateral, Dkt. 174, seeking a determination that the First Bank Lien, now relegated to second position, was fully unsecured pursuant to § 506 and *Kidd*. The motion asserted that the value of the Property is less than the $159,836.42 reported payoff of the AHMS Lien (now in first position *vis-a-vis* the First Bank Lien as a result of the subordination agreement). After a hearing, the court entered an order

---

[3] Prior to the December 13, 2016 hearing, no evidence had been presented to the court with respect to the draw on the line of credit. At the December 13, 2016 hearing, however, Mr. Cooper credibly testified that he drew on the line of credit in good faith and with the knowledge of First Bank, and that Mr. Cooper had no understanding that the draw would impact the respective lien priorities.

[4] For consistency and clarity, the court will continue to refer to the lien as the First Bank Lien.

on June 8, 2016, finding that the motion to value the Property should be determined as of the petition date, with the relative priorities of the liens considered as they existed on the petition date, and that, because the Coopers conceded that the Property was worth more than the balance owed on the First Bank Lien (which was in first position on the petition date), at least $1 of value existed to support the AHMS second lien. Dkt. 250. As a consequence, the debtors could not avoid or modify either mortgage pursuant to 11 U.S.C. § 1322(b)(2) under their chapter 13 plan in this case.

Throughout the litigation, a motion to dismiss filed by the trustee remained pending due to the inability to confirm a plan.[5] After the court determined that both liens remained intact, the Coopers and the trustee worked to propose a confirmable chapter 13 plan. The Coopers filed an amended plan on September 12, 2016, Dkt. 260, which proposed to surrender the Property to the secured creditors, with no payments to be made to either lienholder. The trustee and the Coopers entered a consent order resolving the motion to dismiss on October 13, 2016, Dkt. 276. Then, in accordance with this district's procedures, the trustee filed a motion to confirm the amended plan on October 26, 2016, which provided that the Coopers would pay a total of $123,660.00 to the trustee over the life of the plan. Dkt. 281.

First American, as the holder of the now second-position First Bank Lien, opposed the amended plan's treatment of its claim, contending that the Coopers' proposal to surrender the Property after residing there for the more than five years the case has been pending, with no payments tendered or proposed, was neither fair or equitable, nor proposed in good faith. Dkt. 286. On the same day, First American also filed its Adequate Protection Motion, requesting adequate protection of its interest in the Property pursuant to § 361 and seeking an immediate disbursement from funds held by the trustee. It is First American's position that adequate protection can and

---

[5] The Coopers were making payments to the trustee over the course of the chapter 13 case. As of the date of the hearing, the trustee had $61,554.84 on hand.

4

should be provided back to the petition date, notwithstanding that it did not file its motion until November 2016.

The Coopers filed an objection to the Adequate Protection Motion on December 9, 2016, Dkt. 303, denying that First American is entitled to adequate protection and maintaining that the delays in confirmation were not the fault of the debtors, but simply resulted from the litigation process – litigation to which they were not even parties. The Coopers also filed an objection to the trustee's motion for confirmation of the amended plan on December 10, 2016, Dkt. 304, noting that the consent order resolving the trustee's motion to dismiss required the Coopers to make a payment of $3,383.00 by November 30, 2016, which they had not made and did not intend to make. The Coopers seek to have the court "involuntarily dismiss" the case based on their non-compliance with the consent order.[6] *Id.* at ¶ 1. The Coopers further requested that confirmation be denied and that the funds on hand be returned to them after payment of administrative expenses. *Id.* at ¶ 2.

At the hearing, the trustee indicated that the amended plan is no longer feasible, as it does not meet the liquidation test. Accordingly, even if the Coopers had been able to make the required payment, the amended plan could not be confirmed.

## DISCUSSION

**Adequate Protection**

Section 363(e) provides, in relevant part:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used . . . by the trustee [debtor], the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest. . . . .

---

[6] The Coopers presumably do not wish to voluntarily dismiss their chapter 13 case because such action would likely result in a 180-day bar to refiling under 11 U.S.C. § 109(g).

5

11 U.S.C. § 363(e). Where adequate protection is required by § 363, it may be provided by, among other things,

> (a) requiring the trustee to make a cash payment or periodic cash payments to such entity, *to the extent* that the stay under section 362 of this title, use, sale or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property.

11 U.S.C. § 361(a) (emphasis added).

First American contends that the Coopers' continuous use of the Property throughout the several years this bankruptcy case has remained pending and current proposal to surrender the Property without any payment resulted in a decrease in the value of its interest in the Property, and as a result the court should retroactively condition the debtors' use of the Property on providing First American with adequate protection in the form of payments. None of the other portions of § 361(a) apply here, as First American does not contend that the automatic stay directly resulted in a decrease in the value of its interest in the Property, nor was a lien granted under § 364.[7] Thus, before determining whether adequate protection payments are appropriate under § 361(a), the court must determine to what extent any deterioration in First American's position is attributable to the Coopers' use of the Property.

As detailed above, when the petition was filed, the First Bank Lien (now held by First American) was in first position. At that time, the First Bank Lien secured a loan balance of $90,982.99. While the Coopers scheduled the value of the Property as $75,000, they later conceded that the value as of the petition date was at least $147,000. *See* Dkt. 250 at 4, n.4. They also maintained that the value in June 2016 was $154,000. Meanwhile, First American has always maintained that the Property is worth more than the Coopers contend, arguing that the value as of

---

[7] First American cites the "passage of time," but that is not a statutory basis for providing adequate protection.

the petition date was $215,000, and by June 2016 had appreciated to $235,000. *Id.* The Coopers presented evidence of significant flooding of the Property several times (both before and after June 2016), but provided no evidence of the specific impact of the flooding on the value of the Property nor that the value decreased below the Coopers' conservative value of $154,000, which exceeds the proffered balance of the loan secured by the First Bank Lien of $107,132.65 as of December 13, 2016.

Under any of these values, the First Bank Lien would be fully secured had it remained in first position. The Coopers' current proposed plan (which the parties all agree cannot be confirmed) indicates that the debtors intend to surrender the Property to the secured creditors. The AHMS Lien is in first position, that lienholder has obtained relief from the automatic stay, Dkt. 309, and, based on the proffered December 13, 2016 balance of that note of $204,157.62, there will be insufficient value in the Property after payment of the AHMS Lien to satisfy the First Bank Lien under any valuation. Thus, it is not the Coopers' *use* of the Property that resulted in the decrease in value of First American's interest in the Property, but the reversal of lien position.

In a case cited by First American, Judge Flanagan recently considered and affirmed a similar finding. *Branch Banking & Trust Co. v. Beaman (In re Constr. Supervision Servs., Inc.)*, No. 5:15-CV-434, 2016 WL 2764328 (E.D.N.C. May 9, 2016). In that case, Branch Banking & Trust Co. ("BB&T") held a lien on the chapter 11 debtor's accounts receivable. Two days after the petition was filed, BB&T opposed the debtor's use of cash collateral, contending it was not adequately protected due to the age of some of the accounts receivable, and in the alternative requested adequate protection payments. The bankruptcy court did order adequate protection payments, but after the debtor's case was converted to chapter 7, BB&T maintained that those

7

adequate protection payments were insufficient and it was entitled to a superpriority administrative expense claim for its postpetition interest, costs, and fees.

Among other things, the bankruptcy court, as affirmed by the district court, found that "BB&T did not demonstrate that the collateral securing the debtor's obligation declined in value as a result of the debtor's beneficial use of such collateral during the debtor's Chapter 11 case." 2016 WL 2764328, at *4. The district court noted that the creditor "must prove that the value of the collateral securing the debtor's obligation was impaired as a result of the debtor's 'actual use' of that collateral," and that a "decline in value resulting from some other influence is not recompensable." *Id.* at *7 (citations omitted). While BB&T maintained that had the debtor not used its accounts receivable, BB&T would have been able to recoup its postpetition interest, costs, and fees, the bankruptcy court held, and the district court upheld those findings, that the dissipation of BB&T's interest during the chapter 11 case was caused by the intervening liens of various subcontractors and material providers that were given priority over BB&T's secured claim under North Carolina law. *Id.*

Another case cited by First American, *People's Capital and Leasing Corp. v. Big3D, Inc. (In re Big3D, Inc.)*, 438 B.R. 214 (9th Cir. BAP 2010) (en banc), also supports the proposition that the court must find that it is the postpetition use of the collateral that caused the deterioration in the secured creditor's position. In that case, the creditor conceded that adverse economic conditions, and not wear and tear or the debtor's continued possession and use, caused the decrease in value. 438 B.R. at 219. By extension, the court found that the creditor was not harmed as a result of the automatic stay, a question not at issue here because First American never sought relief from the automatic stay in this case. *See also Lincoln Nat'l Life Ins. Co. v. Craddock-Terry Shoe Corp. (In re Craddock-Terry Shoe Corp.)*, 98 B.R. 250 (Bankr. W.D. Va. 1988) ("case law has

overwhelmingly established that what is protected is the decrease (in value) attributable to the stay").[8]

Analysis of First American's argument with respect to when adequate protection payments should begin bolsters the court's finding that, absent a showing that it was the debtors' use of the Property or the existence of the automatic stay that caused the decline in value of First American's interest, First American is not entitled to adequate protection. For example, in *Big3D*, the court upheld as precedent the case of *Paccom Leasing Corp. v. Deico Elects., Inc. (In re Deico Elects., Inc.)*, 139 B.R. 945 (9th Cir. BAP 1992). *Deico* was cited to the court in *Big3D* for the proposition that adequate protection *had* to be provided as of the petition date, but instead, the *Big3D* court found that *Deico* simply held that the bankruptcy court had *discretion* to fix the amount, frequency, and beginning date of payments as dictated by the circumstances of the case. 438 B.R. at 222. Indeed, *Big3D* interpreted and applied *Deico* as holding that "the amount of adequate protection to which an undersecured creditor is entitled is equal to the amount of depreciation its collateral suffers *after it would have exercised its state court remedies*." *Id.* (citing *Deico,* 139 B.R. at 947) (internal quotation marks omitted) (emphasis added). In *Big3D*, there was no clear temporal point at which the creditor would have exercised its state law remedies outside of bankruptcy, nor was there evidence of the amount the collateral declined in value after that point. *Id.* at 224. Further, as noted above, the economic conditions that caused the deterioration in value would have occurred regardless of the existence of the automatic stay. *Id.*

Here, if the court were to apply the *Deico* reasoning, First American would be required to establish a date on which it would have exercised its state court remedies. There is no evidence

---

[8] While *Craddock-Terry* holds that because what is protected is the decreased value attributable to the stay, adequate protection should be provided as of the petition date, here, the decreased value is not attributable to the stay. Therefore, as discussed below, the petition date is not the relevant date.

that a foreclosure action was pending as of the petition date, and neither First American nor its predecessor in interest sought stay relief at any time during the pendency of the case.[9] Further, as found above, the change in lien position actually impacted the value of First American's interest in the Property (rather than the automatic stay), which may or may not have occurred absent the bankruptcy filing. Accordingly, even if the court were to have found an entitlement to some adequate protection, there is no basis here to award it prior to the date of the filing of the motion for adequate protection. *See also Big3D*, 438 B.R. at 225 (affirming bankruptcy court's concern over delay in filing motion for adequate protection). This is true even if the court disregarded the majority rule that the starting point for adequate protection payments is the filing of the motion for relief from stay or for adequate protection. *See, e.g., Ahlers v. Norwest Bank Worthington (In re Ahlers)*, 794 F.2d 388 (8th Cir. 1986), *rev'd on other grounds*, 485 U.S. 197 (1988); *see also In re Alliance Well Service, LLC*, 551 B.R. 903, 907 (Bankr. D.N.M. 2016) and cases cited therein.

Because the court finds that any deterioration in value of First American's interest in the Property results from the change in lien position, and not the Coopers' use of the Property or the pendency of the bankruptcy case with the automatic stay in place, First American is not entitled to adequate protection. As a result, the court does not need to reach the question of when adequate protection should begin, but if it were to reach the question, the court does not believe the circumstances of this case would merit awarding adequate protection back to the petition date (assuming it would even have the discretion to order such an award).

**Dismissal**

As recited above, the parties agree that the current plan is not confirmable as proposed. Accordingly, the motion for confirmation is denied. Further, the Coopers have defaulted on a

---

[9] Even the holder of the AHMS Lien, now in first position, did not seek stay relief until September 2, 2016, Dkt. 258.

consent order resolving a prior motion to dismiss filed by the trustee. The Coopers will not propose a confirmable plan, but the trustee understandably has not yet filed a notice of default or requested dismissal of the case.  Therefore, upon this order becoming final, the trustee is directed to file a notice of default of the consent order and request for dismissal, after which the court will enter the dismissal order along with any other orders necessary to close this case when procedurally appropriate.

## CONCLUSION

Based on the foregoing, the Motion for Adequate Protection is **DENIED**. The Motion for Confirmation is **DENIED**. All other matters considered by the court at the December 13, 2016 hearing have been addressed by separate orders.

**END OF DOCUMENT**